UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| TAMARRA F.[1], | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )    CIVIL NO. 1:21cv416 |
| | ) |
| KILOLO  KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant

Commissioner of Social Security Administration denying Plaintiff's application for a period of

disability and Disability Insurance Benefits (DIB) under Title II of the Social Security Act.

Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall

file a certified copy of the transcript of the record including the evidence upon which the findings

and decision complained of are based.  The court shall have the power to enter, upon the

pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision

of the [Commissioner], with or without remanding the case for a rehearing."  It also provides,

"[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall

be conclusive. . . ."  42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to

engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to last for a continuous period of no less than 12

months. . . ."  42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental impairment

_____

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3).  It is not enough for a plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity.  *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff.  *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings."  *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977).  "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law."  *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

2.     The claimant has not engaged in substantial gainful activity since December 30, 2018, the alleged onset date (20 CFR 404.1571 *et seq*.).

3.     The claimant has the following severe impairments: obesity; idiopathic angioedema; urticaria; rheumatoid arthritis; and fibromyalgia (20 CFR 404.1520(c)).

4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.     After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except: the claimant can occasionally climb stairs or ramps, balance, stoop, kneel, crouch, or crawl; and can never climb ladders, ropes or scaffolds. Work [sic] an option to change positions no more frequently than every 30 minutes, while remaining on task.

6.     The claimant is capable of performing past relevant work as a Case Manager. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.     The claimant has not been under a disability, as defined in the Social Security Act, from December 30, 2018, through the date of this decision (20 CFR 404.1520(f)).

(Tr. 41-50).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits, leading to the present appeal.

Plaintiff filed her opening brief on March 1, 2022.  On May 6, 2022 the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on June 6, 2022. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled.  *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-

91 (1987).  The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order:  (1)  Is the claimant presently unemployed?  (2)  Is the claimant's impairment "severe"?  (3)  Does the impairment meet or exceed one of a list of specific impairments?  (4)  Is the claimant unable to perform his or her former occupation?  (5)  Is the claimant unable to perform any other work within the economy?  An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled.  A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).   In the present case, Step 4 was the determinative inquiry.

In support of remand, Plaintiff first argues that the ALJ failed to properly weigh the medical opinion evidence.  Because this claim was filed after March 27, 2017, 20 C.F.R. § 404.1520c applies. The "new rules" eliminate the former rule requiring the Commissioner to give "controlling weight" to an uncontroverted treating medical opinion. 20 C.F.R. § 404.1520c (Preamble to the rule, 82 FR 5844; January 18, 2017). Instead, the new rules require the Commissioner to consider specific factors in weighing medical opinions. *Id*. However, these new factors are based on the old factors. The rule change specifically elevates the factors of "supportability" and "consistency" to the top of the hierarchy of the factors for consideration. 20 C.F.R. § 404.1520c(b)(2). Other two factors the Commissioner is required to consider remain "relationship with the claimant" and "specialization." *Id*. When considering the "relationship with the claimant" factor, the Commissioner is required to consider the familiar sub-factors of length

4

of treatment, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining (as opposed to nonexamining) relationship. 20 C.F.R. § 404.1520c(c)(3)(i)-(v).

In this case, Plaintiff's treating physician, Mohan Menon, M.D., an allergy and immunology specialist, provided an opinion supportive of disability. In April 2021 Dr. Menon opined that Plaintiff had recurrent episodes of angioedema and urticaria that were not under control, that she had side effects from her medications, and "episodes" occurring 2-3 times a week making it difficult to work (Tr. 867). Dr. Menon also noted that Plaintiff was on maximum doses of antihistamines and that she had significant side effects from her medications. Specifically,  Xolair caused arthralgia, and Cyclosporine had interactions with other medications (Tr. 867). The ALJ noted that Dr. Menon provided an opinion regarding Plaintiff's ability to sustain full-time employment; however, she discarded his opinion as "vague commentary" that was not "fully persuasive" (Tr 46-47).

Plaintiff argues that despite any "vagueness" of Dr. Menon's statement, his opinion implies that Plaintiff would not be capable of sustaining full-time competitive employment (Tr. 47, 867). An RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting eight hours a day, for five days a week, or an equivalent work schedule. SSR 96-8p. The VE testified that an individual who is absent more than two days a month is unemployable (Tr. 110). Here, Plaintiff's treating physician, who is a specialist, specifically opined that, two or three times a week, Plaintiff experienced uncontrolled flares and side effects from medications that made it difficult for her to work (Tr. 867). Plaintiff's symptom reports also corroborate her bad days with medication side effects interfering with her ability to

even get to work let alone complete a workday (Tr. 102). Plaintiff contends that although the ALJ acknowledged Dr. Menon's status as a treating physician with a "specialization" and that Plaintiff had "six encounters" with Dr. Menon since the onset date, the ALJ did not reconcile those favorable factors with her rejection of Dr. Menon's opinion (Tr. 46-47). 20 C.F.R. § 404.1520c(c)(3)(the frequency of treatment and specialization are factors for evaluating the persuasiveness of medical opinions). Plaintiff concludes that the ALJ did not provide an accurate and logical bridge from the evidence of record to her conclusion in finding Dr. Menon's opinion that Plaintiff would have difficulty sustaining work on a continuing basis "vague." *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000).

The ALJ also found the opinion unpersuasive because Dr. Menon's physical exams did not note urticaria and angioedema (Tr. 46). The ALJ cites to the six exams from Dr. Menon during the three years at issue (Tr. 46). Plaintiff points out that because her condition is characterized by episodic flares, she does not always suffer from angioedema or urticaria. The medical record, Plaintiff's subjective statements, and even the ALJ's own summary all note that these impairments flare at unknown intervals. (AR 16, 45, 46, 96, 98, 255, 406, 621). Thus it is unsurprising that Plaintiff was not in a flare during each exam throughout a period of several years. Nonetheless, the ALJ relied on these sporadic exams to find Dr. Menon's findings as unsupportive of his own opinion, even though some of Dr. Menon's exams do reveal swelling. For example, Dr. Menon's exam on March 13, 2020, revealed swelling of the lateral aspect of the tongue, and he noted Plaintiff had experienced hives a few days earlier and needed prednisone (Tr. 771-72). He administered an injection of epinephrine and Depo-Medrol which decreased the tongue swelling (Tr. 772). Dr. Menon also noted the various medications that were tried including

6

Xolair which worked well for several years and then started to cause muscle and joint aches and was discontinued (Tr. 772). Another medication, Dapasone was tried without significant benefits (Tr. 772). Plaintiff's April 20, 2020, visit with Dr. Menon was a tele-visit and examination could not be done; however, he noted Plaintiff appeared uncomfortable due to hives and had uriticarial lesions on her face with questionable lip swelling (Tr. 769-70). Dr. Menon prescribed Hydroxyzine along with Pepcid and increased prednisone (Tr. 769-70).

Dr. Menon described Plaintiff's "episodes" that occurred two to three days a week leading to difficulty sustaining work which was related to medication side effects and uncontrolled urticaria and angioedema (Tr. 867). Dr. Menon was also aware of Plaintiff's rheumatoid arthritis, a condition also with episodic flares, which he diagnosed, and thought may be playing a contributory role in the urticaria and angioedema (Tr. 767, 772). SSA's consultative examiner, Dr. Mericle, acknowledged at the conclusion of his exam report from September 2019 that Plaintiff's "chief problem is her episodic ra [rheumatoid arthritis] and generalized allergic reactions". This is consistent with Dr. Menon's opinion (Tr. 630). The similarities between the two opinions make them more persuasive. 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.").

Plaintiff's "episodes" limiting her ability to work were also multi-factorial. However, the ALJ apparently did not consider this when evaluating Dr. Menon's opinion. Additionally, the ALJ failed to mention Dr. Mericle's opinion about episodic flares/reactions being Plaintiff's "chief" problem. Plaintiff asserts that the ALJ should have developed the record by re-contacting Dr.

Menon (or asking Plaintiff's counsel to do so) and Dr. Mericle for clarification regarding these opinions as missing work more than two times a month due to episodes could qualify Plaintiff for benefits. *See Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000).

Plaintiff further notes that Dr. Menon's opinion is consistent with Plaintiff's multiple visits to the emergency room, including her observational stays in the intensive care unit (Tr. 20, 406, 446, 487, 504, 514, 563, 568, 694, 698, 735). *See* 20 C.F.R. § 404.1520c(c). In June 2018 Plaintiff  presented to the emergency room with throat swelling, hives, and difficulty swallowing (Tr. 595-598). In July 2018 Plaintiff presented to the emergency room with abrupt tongue swelling making it difficult to swallow; she was admitted from July 15-16, 2018, and received Solumedrol, Benadryl, and Pepcid which resulted in minimal improvement (Tr. 568-578). Plaintiff presented to the hospital on March 11 and 13, 2019 with angioedema, difficulty breathing, and feeling her throat was closing with a feeling of hives in her throat and difficulty swallowing (Tr. 504-536). On March 11, 2019, Plaintiff initially improved with steroids and antihistamines but began having symptoms again, including observed tongue swelling, so she was admitted (Tr. 528). Plaintiff was also admitted to the hospital from May 11-13, 2019, for treatment of angioedema with observations of facial swelling (Tr. 487-503). On November 11, 2019, Plaintiff presented to the emergency room with swelling of her foot and right eye and feeling like her throat was swelling with difficulty swallowing, and she was treated on an outpatient basis with a steroid burst (Tr. 728-736). Plaintiff was admitted to the hospital again from November 27-28, 2019 and started on IV steroids and Benadryl after presenting to the emergency room with left facial and orbital swelling, throat dryness, and itching of her feet for the past two days which was typically how her symptoms started (Tr. 694-699).

8

The ALJ also apparently found Dr. Menon's opinion about medication side effects and notes about the medication Cyclosporine inconsistent and/or unsupportive of his opinion (Tr. 47). Yet, the record reveals that just one month after Cyclosporine was begun, it was discontinued (Tr. 872). The record also reveals that the "unspecified" interactions were Cyclosporine's incompatibility with multiple medications, including RINVOQ and prednisone (Tr. 770, 798). Due to Plaintiff's significant rheumatoid arthritis symptoms, RINVOQ was started, and Cyclosporine discontinued. (Tr. 770).

The ALJ further found Dr. Menon's opinion not persuasive because Plaintiff related to her primary care provider in July 2020 that she had not experienced a hive attack since April 2020 (Tr. 47, 869). Thus, the ALJ made a finding that Dr. Menon's opinion was not consistent with findings from other medical sources. 20 C.F.R. § 404.1520c(c)(2). However, the ALJ does not sufficiently explain why this notation of improvement with Plaintiff's hives is relevant, when the longitudinal record indicates Plaintiff would likely be incapable of working on a regular and continuing basis due to episodic flares, including from angioedema, urticaria, and rheumatic arthritis and the side effects of the treatment. *See Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982) ("ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion."); *Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) ("[T]he ALJ . . . ignored related evidence that undermined her conclusion. This 'sound- bite' approach to record evaluation is an impermissible methodology for evaluating the evidence.").

The ALJ found Dr. Mericle's September 2019 consultative exam for the Indiana DDS "persuasive" (Tr. 47). The ALJ held that Dr. Mericle had "program knowledge" and "specialization," though it is unclear what type of specialization he possessed (Tr. 47). The ALJ

then acknowledged that Dr. Mericle did not give supportive comments regarding his conclusions and did not have an ongoing treatment relationship, but the ALJ found that his conclusions were consistent with the evidence and his examination (Tr. 47). However, the ALJ failed to explain how Dr. Mericle's exam and opinion supported that Plaintiff could stand and walk at least two hours and lift over ten pounds occasionally (Tr. 622, 627). The ALJ assessed a light RFC, which, by definition, finds that Plaintiff can stand and walk six hours in an eight-hour workday and can carry up to twenty pounds occasionally. SSR 83-10p.

Additionally, the ALJ failed to acknowledge or evaluate Dr. Mericle's conclusion that Plaintiff's "chief problem is her episodic ra [rheumatoid arthritis] and generalized allergic reactions" (Tr. 630). This aspect of Dr. Mericle's opinion is consistent with Dr. Menon's opinion about the impact of flares resulting in an inability to sustain work (Tr. 47, 630). This RFC assessment finding was not accurately connected to Dr. Mericle's exam, and the ALJ never explained how the RFC accounted for Dr. Mericle's opinion that Plaintiff's problem was related to episodic flares of the rheumatoid arthritis, urticaria and angioedema (Tr. 630).

The ALJ also failed to reconcile the opinion evidence with evidence concerning Plaintiff's difficulty sustaining work at the case manager job she held until December 2018. Plaintiff testified that there were times she had to leave work and her employer had to call somebody in because she experienced tongue or throat swelling requiring a trip to the emergency room (Tr. 95-96, 101-02). Some days she could not go to work because of the swelling and her medication; Atarax made her unable to drive and caused her to sleep (Tr. 96, 102). The ALJ acknowledged the testimony, but failed to state why it was not persuasive (Tr. 45). Plaintiff also reported that since she left that job in December 2018, she had more aches and pains (Tr. 103).

The ALJ considered the non-examining state agency physicians' opinions of Drs. Sands and Small rendered at the initial and reconsideration levels of review in September and December 2019 (Tr. 114-122, 124-133). Drs. Sands and Small opined that Plaintiff could work at the light exertional level with lifting up to 20 pounds occasionally and 10 pounds frequently, standing/ walking and sitting about 6 out of 8 hours, and performing postural activities occasionally except never climbing ladders/ropes/scaffolds (Tr. 117-120, 129-131). The ALJ acknowledged these opinions were only partially persuasive given that they were not founded on the entire evidence. Like Dr. Mericle's opinion, these opinions were provided in 2019, prior to the additional diagnosis of fibromyalgia, one of the issues raised by the ALJ herself  (Tr. 47). The ALJ noted that additional limitations allowing for "position changes every thirty minutes" were supported due to Plaintiff's diagnosis of fibromyalgia and rheumatoid arthritis and in consideration of her testimony (Tr. 47). Here, as above, the reviewing consultants' opinions were outdated given the new and significant evidence found in the record. The ALJ rejected these opinions, and formed a "middle ground" RFC based on her own interpretation of the medical evidence. *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (ALJs "must not succumb to the temptation to play doctor and make their own medical findings")*; Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003) (ALJs may not substitute their own opinions to fill gaps in the record).

Plaintiff points out that records after Dr. Mericle's consultative exam, which were also not available to the state agency reviewers, provide evidence of ongoing flares and worsening conditions. In November 2019, just two months after Dr. Mericle's exam, Plaintiff was admitted to the hospital again due to her angioedema and started on IV medications due to her swelling (Tr. 694-699). Office visits with Dr. Menon in 2020 also note swelling and that Plaintiff was having a

reaction to Xolair which had previously been helpful (Tr. 772). Plaintiff was also not yet diagnosed with fibromyalgia when Dr. Mericle and the state agency reviewers provided their opinions (Tr. 114-122, 124-133, 621, 784, 790 noting fibromyalgia diagnosis in the summer of 2020). Consequently, their assessments were not based on all of Plaintiff's pain and fatigue producing impairments. *Akin v. Berryhill*, 887 F.3d 314, 318 (7th Cir. 2018) (remanding as the ALJ relied on an outdated opinion despite new records that revealed significant, new developments that bore directly on claimant's functioning).

The ALJ acknowledged Plaintiff had greater limitations than the state agency medical consultants assessed and claimed to rely on Plaintiff's testimony to support the addition of an option to change positions every 30 minutes, while remaining on task (Tr. 44, 47, 107-108). However, the ALJ did not identify what aspect of the testimony supported a light RFC with a sit/ stand option nor is it apparent from the testimony. Plaintiff testified that she sits "a lot" and that getting up from sitting is dificuilt (Tr. 90, 96). She thought she could sit for about an hour before she needed to get up and try to move around; yet, getting up was "hard" because her body was "really, really stiff" and she had pain in her knees and sometimes her hips (Tr. 90-91). In addition to having the flares of angioedema, Plaintiff also had pain and stiffness that prevented her from going a lot of places and activity caused increased pain (Tr. 96). She sat in a jacuzzi tub at her mother's house at the recommendation of her rheumatologist but needed help getting out of the tub and "tuckered [her]self out" trying to get out of the tub (Tr. 96). Her legs and hips hurt, and sometimes her fingers got stuck (Tr. 96-97). She estimated she got flares of hives a couple of times a week and took medication to help the hives (Tr. 98). She had fibromyalgia that was not as bad as the rheumatoid arthritis, but it still caused her body to be in pain and hurt to the touch (Tr.

99-100). Plaintiff testified that she is always tired, and her medication "zonks" her out (Tr. 105). Thus, it is unclear what, if any, aspect of Plaintiff's testimony supports the ALJ's conclusion that Plaintiff could sustain full-time work at the light exertional level, which requires standing/ walking for at least 6 out of 8 hours, even if she had an option to alternate positions every 30 minutes while remaining on task.

The Commissioner contends that the ALJ properly evaluated the medical opinion evidence and that Dr. Menon's opinion required no evaluation since it "appears to cover an issue that is reserved to the Commissioner."  The Commissioner further contends that the ALJ acknowledged Dr. Menon's status as a treating source, that some treatment notes showed abnormalities, and that the medication cyclosporine caused "unspecified interaction". The Commissioner argues that this was sufficient articulation to find Dr. Menon's opinion, which the ALJ called "vague commentary," unpersuasive (Tr. 46). The Commissioner also asserts that the ALJ properly evaluated Dr. Mericle's opinion and that his opinion, along with the state agency opinions, support the ALJ's RFC assessment for light work.

However, Dr. Menon's opinion is not, as the Commissioner argues, an "opinion on an issue reserved to the Commissioner" under 20 C.F.R. § 404.1520b(c).  The ALJ never found that Dr. Menon's statements did not qualify as medical opinions nor did the ALJ claim she did not need to provide articulation about the opinion. *See SEC v. Chenery Corp.*, 318 U.S. 80, 87, 63 S. Ct. 454, 87 L.Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based."). The Commissioner's argument on this point is similar to one this Court recently rejected as contrary to Seventh Circuit case law. See *Benjamin H. v. Kijakazi*, No. 1:21cv271, 2022 U.S. Dist. LEXIS 86841, at *10-11

13

(N.D. Ind. May 13, 2022) (citing *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) and *Garcia v. Colvin*, 741 F.3d 758, 760 (7th Cir. 2013) ("whether the applicant is sufficiently disabled to qualify for social security disability benefits is a question of law that can't be answered by a physician" and "the answer to the question depends on the applicant's physical and mental ability to work full time, and that is something to which medical testimony is relevant and if presented can't be ignored.")). In any event, the Commissioner has not explained how Dr. Menon's opinion qualifies as the kind of conclusory statement that SSA deems an opinion on an issue "reserved to the Commissioner."

As discussed above, Plaintiff identified medical evidence consistent with and supporting Dr. Menon's opinions including evidence the ALJ failed to address and/or selectively reviewed. The Commissioner implies the ALJ did not need to address this evidence from June and July 2018 which was prior to Plaintiff's alleged disability onset date by about six months. Yet, the Seventh Circuit and the District Courts within the Seventh Circuit have found reversible error due to the failure to consider medical evidence and opinions before an alleged disability onset date. *See Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (holding the ALJ's failure to mention a treating physician's opinions rendered two and three years prior to the claimant's alleged onset date of disability was reversible error). Recognizing the importance of evidence preceding an alleged disability onset date, SSA has a duty to develop the record for at least a 12-month period prior to the date an application is filed. 20 C.F.R. § 404.1512(b). In this case the evidence preceding Plaintiff's alleged disability onset date, including an emergency room visit and an inpatient stay for angioedema, is consistent with Dr. Menon's opinions. The ALJ erred in failing to address this evidence which was consistent with and supported Dr. Menon's opinions.

14

With respect to medication side effects, the Commissioner asserts that Plaintiff has not explained how medication side effects impacted her ability to work. As noted, one of the reasons the ALJ discounted Dr. Menon's opinion was an alleged lack of support concerning medication side effects, including Cyclosporine (Tr. 46-67).  However, the record is consistent with Dr. Menon's report about medication side effects. The record confirms that Cyclosporine, which was prescribed to treat refractory urticaria and angioedema, was discontinued due to renal side effects; it was also incompatible with RINVOQ, a medication Plaintiff's rheumatologist wanted her to start due to symptomatic rheumatoid arthritis (Tr. 770, 793-798, 867). The record also indicates that Plaintiff suffered adverse reactions to other medications, including prednisone and that angioedema flared when the dosage was decreased (Tr. 767, 767-770, 793).

The Commissioner does not dispute that the ALJ failed to confront the consistency of Plaintiff's reports that in her past job she had to leave work early due to her allergic reactions and sometimes could not go to work due to her condition and medication side effects. The Commissioner implies Dr. Menon's opinion about absences was based solely on Plaintiff's reports and could be discounted on this basis. While Dr. Menon may have accounted for Plaintiff's symptom reports, his opinion was not based "solely" on her statements.  Plaintiff has identified ample medical evidence that supports that she experienced flares, even if all instances are not documented with contemporaneous emergency room or other medical office visits. Yet, the  RFC did not take flares into account.

In this case, the medical evidence and opinions as well as the symptom reports together indicate that Plaintiff's impairments with episodic swelling and medication side effects, including drowsiness from the medications, would likely cause attendance problems and work-related

15

absences.  The Commissioner contends that the evidence does not support that Plaintiff would have more than two absences a month, which according to the VE would not be tolerated. Clearly, though, how often Plaintiff would miss work or need to leave early, or how often she would be unable to focus and attend to work activities are factual issues that must be resolved upon remand after proper consideration of the medical opinion evidence and symptom testimony. This may require the ALJ to obtain an updated medical expert opinion upon remand. Additionally, remand is warranted for proper assessment of all of the medical opinions in this case and for the ALJ to evaluate the medical opinion evidence consistent with SSA's regulations and to properly support the weighing of those opinions and the formulation of the RFC.

Next, Plaintiff argues that the ALJ erred in the subjective symptom evaluation and also failed to consider Plaintiff's impairments in combination.  An ALJ's symptom evaluation is reviewed for legal error and will be reversed if, overall, the ALJ's factual conclusions are "patently wrong." *Cullinan v. Berryhill*, 878, F.3d 598, 604 (7th Cir. 2017); *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006). An ALJ's assessment is "patently wrong" when the findings lack adequate explanation, are not "competently" explained, are not supported by substantial evidence from the record as a whole or are otherwise factually or logically mistaken. *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006), *Cullinan*, 878 F.3d at 604 (credibility determination lacks support when it relies on inferences that are not logically based on specific findings and evidence).

The Agency provides a specific set of criteria to consider when evaluating symptom testimony. First, the ALJ must determine whether a claimant has medically determinable impairments that reasonably could be expected to produce her symptoms. SSR 16-3p; 20 C.F.R.

16

§404.1529(a). Statements regarding intensity and persistence may not be disregarded simply because they are not substantiated by objective evidence. SSR 16-3p. SSR 16-3p provides a specific two-factor test an ALJ must use to evaluate the "intensity, persistence, and functionally limiting effects of an individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities." In determining the ability of the claimant to perform work-related activity, the ALJ must consider the entire case record, and the decision must contain specific reasons for the finding. *Id*. The ALJ must weigh the subjective complaints, the relevant medical evidence, and any other evidence with specific factors: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of any medication; 5) treatment other than medication, for pain or other symptoms; 6) other measures taken to relieve pain or other symptoms; 7) other factors concerning functional limitations due to pain or other symptoms. SSR 16-3p; 20 C.F.R. § 404.1529(c)(3).

Here, in assessing Plaintiff's consistency/credibility, the ALJ merely summarized Plaintiff's statements concerning the intensity, persistence and limiting effects before directly comparing them to a medical summary (Tr. 45-47). The ALJ then found Plaintiff's symptom reports not consistent or credible because the record does not document "sufficient objective medical evidence to substantiate the severity and degree of functional limitations alleged by claimant" (Tr. 45). The ALJ employed a "backward reasoning" in assessing Plaintiff's symptoms by engaging in a cherry-picked recitation of the evidence and then finding that Plaintiff's impairments and symptoms would only limit her to work at the light exertional level with postural limitations and the "option to change positions to address allergic flares, fatigue and

17

pain" (Tr. 46).

Not only did the ALJ fail to follow the Agency's rules and regulation for the evaluation symptom testimony, the ALJ also failed to reconcile her finding regarding the lack of sufficient "objective evidence" with the conclusions of the state agency evaluators who concluded that Plaintiff's symptoms included pain and weakness and that her statements about the intensity, persistence, and functionally limiting effects of the symptoms were "substantiated by the medical evidence alone" (Tr. 118, 129).

In considering the severity of Plaintiff's angioedema symptoms, the ALJ found Plaintiff's throat swelling resulted in only two "brief overnight" stays for observation (Tr. 46, analyzing SSR 16-3p's frequency and intensity of symptoms factor). However, the ALJ failed to reconcile this with Plaintiff's reports that her angioedema occurs unexpectedly and had also caused her to go to the emergency room. (Tr. 96). Logically, an unexpected trip to the emergency room will result in missed work. However, here, the ALJ looked only at the two overnight stays without looking at how many times Plaintiff went to the emergency room. As noted, Plaintiff had multiple trips to the hospital for angioedema (Tr. 20, 406, 446, 487, 504, 514, 563, 568, 694, 698, 735). Plaintiff also stated that even if she does not have to go to the emergency room, during a normal flare she takes medication to keep her flare from worsening; the medication Plaintiff must take to stave off flares causes such fatigue that she cannot drive safely, and she needs to sleep (Tr. 96, 102). Nonetheless, the ALJ did not consider the severe fatigue documented in the record relating to her medication that supports Plaintiff's statements (Tr. 322, 392, 397, 412, 622, 636, 645, 653, 794, 803, 873, 901). Instead, as noted above, when discussing the side effects of her medication, the ALJ focused on Cyclosporine, a medication prescribed for only a month (Tr. 46). Even when

18

focused on the "unspecified" interactions caused by this medication, the ALJ failed to engage in an accurate credibility analysis. As noted, the medication caused potentially life-threatening interactions with other medications, including renal failure. (Tr. 765, 770).

The ALJ acknowledged that Plaintiff's medical record revealed that many of her medications caused significant side effects, yet the ALJ did not consider the other medication attempted, specifically the Hydroxyzine or Atarax four times a day that caused the fatigue Plaintiff described (Tr. 46, 36-54, 96, 385, 397). Given this consistency analysis, the ALJ did not "build a logical bridge between [her] statements and the record." *Frazier v. Berryhill*, 2019 U.S. Dist. LEXIS 4640, *12-13, citing *Cullinan*, 878 F.3d at ("A credibility determination lacks support when it relies on inferences that are not logically based on specific findings and evidence.") (citing *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014)); *Villano v. Astrue*, 556 F.3d 558, 562-63 (7th Cir. 2009) (requiring an analysis of the SSR 96-7p, now the SSR 16-3p, factors as part of a logical bridge for the credibility analysis). Here, the ALJ provides no logical analysis connected to specific evidence to demonstrate that Plaintiff's angioedema and its treatment did not cause significant issues with her ability to work on a regular and continuing basis.

The ALJ also found that while Plaintiff suffered from severe pain producing impairments, they were not as limiting as she stated given that her prescribed medications caused improvement (Tr. 46). The ALJ provided two citations noting that immunosuppressants made Plaintiff "feel great" and Cymbalta allowed her to feel "the best she felt in a long time." *Id*. However, as discussed above, the ALJ never received input from a medical expert after Plaintiff's diagnosis of both rheumatoid arthritis along with her fibromyalgia.

The ALJ also failed to address evidence contradicting her findings and supporting Plaintiff's symptom reports. For example, lab reports showed elevated sedimentation rate (sed rate) at 40 in July 2019 and C-reactive protein (CRP) elevated to 1.9 mg/dl in June 2019 and 1.7 mg/dl3 in July 2019 (Tr. 796, 843). The ALJ did not discuss evidence from September 2019 indicating Plaintiff had been on Plaquenil and was having symptom of brain fog and disorientation, severe arthralgia, unusual fatigue rated as a 10/10, sleep problems, and morning stiffness (Tr. 652-657). In September 2019, Regina Frederick, an NP with Parkview Rheumatology, diagnosed Plaintiff with seropositive rheumatoid arthritis involving multiple sites, and she was started on weekly Enbrel injections (Tr. 655). An exam from February 2020 showed tenderness and decreased range of motion in the left shoulder, tenderness/crepitus in the knees, and tenderness in the hands (Tr. 815). An exam from June 2020 showed tenderness and decreased range of motion of the left shoulder and tenderness/crepitus over both knees (Tr. 797).

The ALJ also failed to discuss evidence regarding testing scores on the RAPID3 testing that supports Plaintiff's symptom reports about the severity of her pain and functional limitations. Plaintiff's RAPID3 scores were mostly in the severe range with two scores in moderate range: 17.3 (severe) in November 2019 (Tr. 825); 9.5 (moderate) in February 2020 (Tr. 812); 17.3 (severe) in March 2020 (Tr. 803); 21.2 (severe) in June 2020 (Tr. 795), 21.7(severe) in July 2020 (AR 785); and 10.2 (moderate) in August 2020 (Tr. 777).

In addition to suffering from rheumatoid arthritis and fibromyalgia, Plaintiff is also morbidly obese with a BMI exceeding 40 (Tr. 776, 781, 916, 924, 930). The ALJ acknowledged this was a severe impairment, but it is not apparent how she factored that into her consideration of the symptom reports.  The ALJ never sought expert input about the combined impact of all of

20

Plaintiff's impairments. Rather, the ALJ relied solely on two instances of nebulous improvement to find Plaintiff's statements regarding her pain inconsistent and thus that she is capable of standing and walking six hours out of an eight-hour workday.

The record, at best, indicates occasional waxing and waning of pain with persistent fatigue. Aside from these two instances of improvement in pain, the record also reveals severe or moderate arthralgias in the left shoulder, neck, left hip, right hip, left knee, and back (Tr. 328, 635, 644, 652-53, 666). Plaintiff often rated her pain a six or an eight out of ten (Tr. 635, 644, 652, 802). She indicated she experiences a high level of chronic fatigue, which she rated as a 10/10 (Tr. 785, 794).  The record also notes Plaintiff has difficulty getting in and out of cars, turning faucets on and off, walking on flat ground, and dressing herself. (Tr. 90, 635, 802). Nonetheless, the ALJ does not discuss any limitations due to Plaintiff's pain. Rather, the ALJ conclusively states in her analysis that Plaintiff does not suffer from "marked limitation of daily activities" due to her rheumatoid arthritis or her fibromyalgia. (Tr. 43-44). Considering the entire record, the ALJ's reasoning does not build a logical bridge from Plaintiff's statements about the frequency and intensity of her pain to the evidence found in the record. The ALJ's symptom assessment is "patently wrong" as the findings lacked substantial evidence from the record as a whole. *Allord*, 455 F.3d at 821. Thus, remand is warranted on these issues.

Next, Plaintiff argues that the ALJ failed to include all of her limitations in the RFC and in the hypothetical to the VE.  As discussed above, the ALJ failed to properly analyze the medical evidence and symptom testimony leading to a failed assessment of Plaintiff's RFC. Here, the medical review by the state agency physicians were outdated. The ALJ noted that the evaluators relied on an incomplete record. (Tr. 47, 114, 125). The ALJ noted that both the initial review of

the record, as well as the reconsideration, are only "partially" persuasive, and found they were

outdated. (Tr. 47). The ALJ then rejected the opinion of Plaintiff's own physician who opined

Plaintiff could not work on a continuing basis. (Tr. 46). After rejecting Plaintiff's testimony, the

ALJ relied solely on DDS's exam that assessed vague findings that Plaintiff could walk "at least

two hours" in an eight-hour workday and carry "over ten pounds occasionally." (Tr. 47, 622,

627). In this case, the ALJ did not explain how an individual with fibromyalgia in combination

with rheumatoid arthritis compounded by morbid obesity can walk/stand six hours out of an

eight-hour workday. (Tr. 776, 784, 793, 802, 824). The ALJ erred by not providing a logical path

for a reviewing court to trace her reasoning. (Tr. 46). *Scott v. Barnhart*, 297 F.3d 589, 595 (7th

Cir. 2002).

       Additionally, the ALJ did not provide an adequate analysis of Plaintiff's obesity. While

finding that Plaintiff suffered from a severe impairment of obesity, the ALJ did not explain how

this impairment affects either her other pain-producing impairments or her ability to work in

general. 20 C.F.R. § 416.920(5)(c)(a severe impairment limits your physical or mental ability to

do basic work activity). The RFC assessment must include a narrative that shows the presence

and degree of any specific limitations and restrictions, as well as an explanation of how the

evidence in the file was considered in the assessment. SSR 96-9p. The individual's maximum

remaining capacity to perform sustained work on a regular and continuing basis must be stated.

*Id*. This was not assessed in relation to Plaintiff's obesity in combination with her other

pain-producing impairments. Rather, the ALJ simply concluded that obesity is not a listed

impairment and, when considered in combination with other impairment(s) of the record, did not

impose severity of functional effects to medically equal a listing. (Tr. 44). Thus, the ALJ did not

fully explain the effect of Plaintiff's obesity in relation to the RFC. SSR 19-2. Here, the record supports limitations to weight-bearing joints, including the knee and hips due to Plaintiff's rheumatoid arthritis and fibromyalgia. (Tr. 330, 325, 328, 662, 780, 788, 797, 806, 815, 828, 873).

Further, the ALJ did not fully explain why she did not provide limitations for fingering and handling (Tr. 44). The record establishes a diagnosis of hand, wrist, and finger arthralgia as well as stiffness and swelling (Tr. 794, 776, 784, 793, 802, 811, 824). Plaintiff reported much difficulty dressing herself and tying her shoelaces and some difficulty grasping larger objects, including bringing a full glass to her mouth (Tr. 784, 793). Nonetheless, despite summarizing Plaintiff's symptoms, the ALJ did not explain why Plaintiff had no limitations with handling and grasping items (Tr. 45).The ALJ must support her findings with specific reasons, and those reasons must be supported by substantial evidence and explained well enough for a reviewing court to conduct a thorough review. *Villano*, 556 F.3d at 562; *Pepper v. Colvin*, 712 F.3d 251, 367 (7th Cir. 2013).

Also, as discussed above, the ALJ failed to provide an adequate analysis as to why Plaintiff could work on a continuing basis after rejecting both Dr. Menon's opinion, failing to evaluate the supportive aspects of Dr. Mericle's opinions, as well as Plaintiff's subjective statements. Due to Plaintiff's intense fatigue and the number of expected absences, the ALJ's conclusion that Plaintiff could work on a continuing basis is not supported by substantial evidence. The ALJ also failed to consider that most competitive jobs require the ability to travel to and from work. POMS DI 24020.010. Thus, remand is required for a reformulation of what employment, if any, Plaintiff can perform.

<u>Conclusion</u>

On the basis of the foregoing, the Decision of the Commissioner is hereby REVERSED

AND REMANDED for further proceedings consistent with this Opinion.


 Entered: June 22,  2022.


                                        <u>s/ William C.  Lee   </u>
                                        William C. Lee, Judge
                                        United States District Court

24